United States District Court
Eastern District of California

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MUKUM ARMSTRONG,

Petitioner,

v.

WARDEN OF CALIFORNIA CITY DETENTION CENTER, *et al.*,

Respondents.

Case No. 1:26-cv-04094 (AMO)

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITHOUT PREJUDICE**

Re: Dkt. Nos. 1, 19

Before the Court is Petitioner Mukum Armstrong's petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 and Respondents' motion to dismiss arguing that Petitioner's detention is lawful under 8 U.S.C. § 1231(a). Dkt. Nos. 1, 19. Having considered the parties' submissions, and for the reasons set forth below, the Court GRANTS Respondents' motion to dismiss and DIMISSES the petition without prejudice.

## I. BACKGROUND

Petitioner is a citizen of Cameroon who entered the United States on September 13, 2019 through the San Ysidro Port of Entry and was detained by U.S. Customs and Border Patrol shortly thereafter. Dkt. No. 17-1 at 2. Though unclear from the records before the Court, it appears Petitioner was released from immigration detention at some point to pursue further immigration relief, and applied for asylum and withholding of removal under the Convention Against Torture Act. *Id.*

On September 16, 2020, an Immigration Judge denied Petitioner's asylum application and ordered him removed to Cameroon, and he timely appealed the order to the Board of Immigration Appeals ("BIA"). *Id.* at 2–3; Dkt. No. 8-1 at 1–12. His BIA appeal was dismissed on July 1, 2022. Dkt. No. 17-1 at 3; Dkt. No. 8-1 at 1–6. Following the dismissal, Petitioner submitted a

petition for review of the removal order to the Ninth Circuit, was granted Temporary Protected Status ("TPS") by USCIS, and applied to register for Permanent Residence and Adjustment of Status. Dkt. No. 17-1 at 3. Petitioner's petition before the Ninth Circuit regarding his removal order was dismissed on March 2, 2023, and his TPS was terminated sometime around December 29, 2023. *Id.* USCIS denied his Application to Register for Permanent Residence and Adjustment of Status several years later on April 4, 2025. *Id.*

On the record before the Court, it appears Petitioner has had a final order of removal in place since at least the denial of his petition for review by the Ninth Circuit on March 2, 2023. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060, n.5 (9th Cir. 2008) ("the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review" and the "'finality of an appellate order hinges on the mandate' ") (internal citation omitted). However, Petitioner has not alleged that he was ever detained by the Department of Homeland Security ("DHS") to execute his final order of removal.

Petitioner was finally taken into custody to execute his order of removal on April 13, 2026 when he voluntarily appeared at the Baltimore Intensive Supervision Appearance Program office. Dkt. No. 17-1 at 2. Since being taken into custody, Respondents have obtained travel documents to Cameroon for Petitioner and stand ready to schedule him for a flight and execute his removal. *See* Dkt. No. 8-3 at 1.

Petitioner filed the instant petition for writ of habeas corpus on May 28, 2026 arguing that his current detention violates due process, is causing irreparable harm to his family, and is unlawful given that he is neither a flight risk nor danger to the community. Dkt. No. 1 at 6–7. Following the filing of his petition, he also submitted a motion to reopen his removal proceedings with the BIA, which remains pending. *See* EOIR: Automated Case Information, available at https://acis.eoir.justice.gov/en/caseInformation. As of the date of this order, Petitioner's removal order has not been stayed.

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

(citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

Section 1231(a) controls the detention of noncitizens who have been ordered removed. *See* 8 U.S.C. § 1231(a) (titled "Detention, release, and removal of aliens ordered removed"). Here, there appears to be no dispute that a final order of removal is in place. Indeed, Petitioner concedes this in reply, explaining that he has lived at liberty in the United States for years following his removal order becoming administratively final. Dkt. No. 19 at 2. Petitioner maintains, however, that even under § 1231(a), due process requires release or, alternatively, a bond hearing. *See* Dkt. No. 19 at 2.

Courts have recognized due process claims where § 1231(a) controls detention under two circumstances. First, a noncitizen who has been detained under § 1231(a)(6) for a prolonged duration may be entitled to release under *Zadyvas v. Davis*. *See Zadyvas*, 533 U.S. at 689 (holding that § 1231(a)(6) does not authorize indefinite detention, but rather "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States"). Second, Courts have found that noncitizens who were previously detained by DHS to execute a final removal order, and then released on an order of supervision under § 1231(a)(3), have a due process claim where the Government fails to properly revoke that release. *See Bonyadian v. Lyons*, No. 1:26-CV-03504 (AMO), 2026 WL 1398881, at *3 (E.D. Cal. May 19, 2026) (collecting cases). Here, Petitioner has not alleged facts that properly invoke either theory.

United States District Court
Eastern District of California

Section 1231(a)(6) provides for discretionary detention to execute a removal order after the 90-day removal period has lapsed, *see* 8 U.S.C. § 1231(a)(6), and which applies to a noncitizen who has pending a "collateral challenge to his removal order (a motion to reopen)[,] ... as well as to aliens who have exhausted all direct and collateral review of their removal orders." *Diouf v. Napolitano*, 634 F.3d 1081, 1085 (9th Cir. 2011); *see also Escobar v. Lynch*, No. CV 16-00683 LEK-RLP, 2017 WL 2369374, at *4 (D. Haw. May 31, 2017) ("Petitioner's collateral challenge to try to reopen the removal proceedings does not mean that his removal order is not final"). Under *Zadvydas*, only the first combined six months of post-removal-order detention are effectively immune from due process challenge. *See Prieto-Romero*, 534 F.3d at 1062; *Diouf*, 542 F.3d at 1231–32. Here, because Petitioner has only been detained three months any *Zadvydas* claim necessarily fails.

Petitioner has also not stated a due process claim with respect to revocation of any supervised release. Based on the records before the Court, it does not appear that Petitioner was previously detained by DHS to execute his removal order and then subsequently released on an order of supervision. Rather, it appears that Petitioner was ordered removed several years ago and simply did not depart upon his order of removal becoming final. On this record, the Court cannot find that Respondents violated Petitioner's due process rights by unlawfully revoking a prior order of release on supervision. *See L.M.P. v. Chestnut*, No. 1:26-CV-04673-JLT-EGC, 2026 WL 1906293, at 3 (E.D. Cal. July 2, 2026) (finding detention under § 1231(a)(6) lawful where Petitioner was not previously detained by DHS and had motion to reopen removal proceedings pending before the BIA); *Lin v. Francis*, No. 25 CIV. 10001 (PAE), 2025 WL 3751855, at 4 (S.D.N.Y. Dec. 29, 2025) ("[Petitioner] also asserts that ICE's regulations required it to provide notice before detaining him. But these regulations do not apply to [Petitioner], whom ICE had not previously detained and who therefore was not released on supervision."); *Piao v. Lyons*, No. 25 Civ. 1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) ("[T]he Court concludes, as [have] other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the [g]overnment's ability to detain Petitioner [without notice] for the purpose of enforcing that removal order at this time [i.e., years later]").

United States District Court
Eastern District of California

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Petition for Writ of Habeas Corpus is DISMISSED without prejudice to refiling at a later date. The Court vacates its no transfer order. *See* Dkt. No. 7. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: July 29, 2026

ARACELI MARTÍNEZ-OLGUÍN
United States District Judge